IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


WILLIAM PROSDOCIMO,               )
    Petitioner,               )
                    )
        v.               )     Civil Action No. 08-1500
                    )
JEFFREY A. BEARD et al.,               )
    Respondents.               )


Report and Recommendation


I. Recommendation:

It is respectfully recommended that the petition of William Prosdocimo for a writ of

habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for

appeal exists, that a certificate of appealability be denied.


II. Report:

    A. Procedural History.

    William Prosdocimo, an inmate in the federal witness protection program, by his counsel

has presented a petition for a writ of habeas corpus.[1] In his petition, Prosdocimo seeks to

---

[1] The original petition was filed by the Western District Public Defender on October 24,
2008; on December 29, 2008, the Public Defender was granted leave to withdraw and on January
12, 2009, the Public Defender's motion to withdraw its prior withdrawal was granted. Again on
May 13, 2009, the Public Defender moved to withdraw and on May 22, 2009, the Eastern District
Community Defender was granted leave to appear on behalf of the petitioner and on August 10,
2009 an amended petition was filed.  On August 11, 2009, counsel for the petitioner moved to
stay further proceedings so petitioner could exhaust his state court remedies. Those were
dismissed by the Court of Common Pleas and on July 12, 2010, the appeal to the Superior Court
was discontinued by petitioner's counsel( See: Answer at p.1354). On July 7, 2010 counsel for
the petitioner's motion to reopen the federal proceedings was filed and subsequently granted.

challenge his conviction of first degree murder and the life sentence imposed on November 7, 1983, at No. CC198104540, in the Court of Common Pleas of Allegheny County, Pennsylvania.[2]

An appeal was taken to the Superior Court in which the issues presented were:

I. During appellant's trial on a charge of criminal homicide, the trial court improperly admitted a mass of evidence concerning his alleged narcotics dealings, most of it totally irrelevant, and without balancing the prejudicial impact of such evidence vis-a-vis its probative value.

II. The court erred in denying the appellant's motion for mistrial, when the Commonwealth attorney asked questions of Officer Orlando Pilardi which were intended to establish other criminal activity, remote in time from the charged murder and in no way having any connection to that crime.

III. The Commonwealth knowingly used false testimony to convict the appellant.

IV. Witness Donald Prosdocimo was "driven off the stand" in violation of law.

V. The court improperly permitted Commonwealth witness Frank Faiello to testify as to his state of mind.

VI. The Commonwealth attorney intentionally circumvented the Disqualification Act, 42 P.C.S.A. § 5912 by dismissing perjury charges against Anthony Faiello in exchange for his testimony against appellant.

VII. In cross-examination of defense witness Gabler, the court permitted the Commonwealth's attorney to establish that co-defendant Robert Bricker was accused of other murders and committed other crimes.

VIII. The entire trial "derailed" when the trial court erroneously permitted improper evidence to be introduced in the Commonwealth's rebuttal case.

IX. The Commonwealth attorney's closing argument was clearly improper and

---

Although granted leave to file any appropriate amendments, counsel for the petitioner elected not to do so and on August 12, 2010 the respondents filed their answer. Thus, at the request of counsel for the petitioner, almost two years has elapsed since the original petition was filed and the matter is now finally in a posture for disposition.

[2] Prosdocimo is also serving another Pennsylvania life sentence for second degree murder and a thirty year Florida homicide sentence.

prejudicial.

X. The court improperly permitted Charles Kellington to testify as to his own truth and veracity.

XI. The defendant's presumption of innocence was stripped from him when the Commonwealth was permitted to establish that he was in jail.

XII. The court improperly commented on the credibility of defense witness James Mullens.

XIII. The court erred in permitting the prosecutor to cross-examine his own witness Ralph Tibbetts.

XIV. The court improperly prohibited the defense from calling Judge James McGregor as a witness in surrebuttal.[3]

On May 21, 1986, the judgment of sentence was affirmed. Specifically in doing so, the Superior Court concluded that the petitioner's issues III, IV, XI and XV were procedurally waived and that the remaining issues were meritless.[4] Leave to appeal was denied by the Pennsylvania Supreme Court on November 18, 1986.[5]

A post-conviction petition was filed on either June 23, 1987 or July 31, 1987, and relief was denied on February 1, 1989.[6] An appeal was taken to the Superior Court in which the issues presented were:

I. The PCRA court erred in denying appellant's petition for relief under the post-conviction hearing act without an evidentiary hearing especially as to issues 9(A)

---

[3] See: Answer at pp.298-356 (All record references to the pages in the answer refer to the "Bates" numbered pages).

[4] See: Answer at pp.506-534.

[5] See: Answer at p.652.

[6] See: Answer at p.713.

through (F) and 8(B).

II. The PCRA court was in error for finding trial counsel and appellate counsel effective although failing to object to and/or preserve for appeal through post-trial motions the following issues:

> A. Trial counsel failed to find, interview and/or call at trial Mary Ann Latona, Michael Maxikuli, William Incardona, Sam Rende and post cards.

> B. The closing remarks of the prosecution were both improper and prejudicial.

> C. The Commonwealth knowingly used false testimony and offers of proof.

> D. Donald Prosdocimo was "driven off the stand" in violation of law.

> E. The trial court improperly permitted Charles Kellington to testify as to his own truth and veracity.

> F. The trial court prohibited the defense from calling Judge James McGregor as a witness.

III. In the alternative, did Barbara Fleisher, Esquire, preserve for appeal the meritorious issue contained in issue II.[7]

On April 16, 1990, the denial of post-conviction relief was affirmed on the grounds that:

> The trial court found that all of the issues which had not been finally litigated on their merits plainly lack merit, and so counsel could not be deemed ineffective for failing to raise them. We agree.[8]

Leave to appeal to the Pennsylvania Supreme Court was sought raising issues I and II of

---

[7] See: Answer at pp.723-780.

[8] See: Answer at p.825.

the Superior Court appeal[9] and the application was denied on March 28, 1991.[10]

On April 17, 1993, petitioner filed a second post-conviction petition and relief was denied on October 4, 2005.[11] An appeal was taken to the Superior Court in which the issues presented were:

I. Is Mr. Prosdocimo eligible to obtain relief under the Post Conviction Relief Act?

II. Was trial counsel ineffective for failing to move for a mistrial when key Commonwealth witness, Charles Kellington, stated in a non-responsive answer to a question during cross-examination, that Mr. Prosdocimo's alleged accomplice/coconspirator, Robert Bricker, received the death penalty after being tried on the same charges; and were counsel who represented Mr. Prosdocimo in post-trial motions, at sentencing, on direct appeal, and in his first PCRA petition proceedings ineffective for not raising this issue?

III. Did the trial court abuse its discretion in denying the Post Conviction Relief Act Petition without a hearing insofar as Mr. Prosdocimo presented an issue that would have entitled him to relief?[12]

On June 4, 2007, the denial of post-conviction relief was affirmed on the basis that the issues which the petitioner sought to raise had been previously litigated and that under the then existing post-conviction act, the issue of counsel's ineffectiveness had been waived and no exception to the waiver existed.[13]

Leave to appeal to the Pennsylvania Supreme Court was sought in which the issues presented were:

---

[9] See: Answer at p.827.

[10] See: Answer at p.895.

[11] See: Answer at p.967.

[12] See: Answer at pp.1001-1032.

[13] See: Answer at pp.1100-1118.

I. Is an allegation in a second PCRA petition that prior counsels' ineffectiveness deprived the defendant of a fair trial by failing to challenge evidence that an alleged accomplice/co-conspirator facing the same charges was found guilty and given the death penalty, thereby stripping the defendant of his presumption of innocence, sufficient to overcome waiver under 42 Pa.C.S.§9543(a)(3)(ii)?

II. Was trial counsel ineffective for failing to move for a mistrial when key Commonwealth witness, Charles Kellington, stated in a non-responsive answer to a question during cross-examination, that Mr. Prosdocimo's alleged accomplice/co-conspirator, Robert Bricker, received the death penalty after being tried on the same charges; and were counsel who represented Mr. Prosdocimo in post-trial motions, at sentencing, on direct appeal, and in his first PCRA petition proceedings, ineffective for not raising this issue?

III. Did the trial court abuse its discretion in denying the Post Conviction Relief Act petition without a hearing insofar as Mr. Prosdocimo presented an issue that would have entitled him to relief?[14]

Leave to appeal to the Pennsylvania Supreme Court was denied on October 25, 2007.[15]

The instant petition was filed on October 24, 2008 and an amended petition was filed on August 10, 2009, alleging that Prosdocimo is entitled to federal habeas corpus relief on the following grounds:

I. Mr. Prosdocimo was denied his right to due process, to confront his accusers and the effective assistance of counsel when the prosecution and trial counsel failed to correct materially false testimony by key Commonwealth witnesses Charles Rossi and Anthony Faiello.

II. Mr. Prosdocimo was denied his right to due process and to confront his accusers because the Commonwealth suppressed favorable evidence that would have undermined the credibility of key Commonwealth witness Anthony Faiello.

III. Mr. Prosdocimo was denied his right to due process and to confront his accusers because of the cumulative effect of all false, misleading and suppressed evidence in violation of Napue and Brady.

---

[14] See: Answer at pp.1122-1148.

[15] See: Answer at p.1208.

IV. Mr. Prosdocimo was denied his right to an impartial jury and due process because one of the jurors was biased against him based on outside information the juror possessed regarding his nephew's association with Mr. Prosdocimo.

V. Mr. Prosdocimo was denied his right to due process and the effective assistance of counsel because the Commonwealth repeatedly engaged in prosecutorial misconduct during closing argument without objection by trial or appellate counsel.

VI. Mr. Prosdocimo was denied his right to due process, to present a defense and the effective assistance of counsel when the prosecutor drove defense witness Donald Prosdocimo off the stand by threatening him with arrest and appellate counsel failed to raise any claim based on this misconduct.

VII. Mr. Prosdocimo was denied his right to due process, counsel and the effective assistance of counsel because the trial court permitted a conflicted attorney to assist unprepared successor counsel rather than grant a reasonable postponement of trial.

VIII. Mr. Prosdocimo was denied his right to the effective assistance of counsel because trial counsel failed to discover and present evidence that would have impeached the testimony of the Commonwealth's key witnesses.

IX. Mr. Prosdocimo was denied his right to due process because the trial court admitted irrelevant, prejudicial evidence regarding drug involvement by Mr. Prosdocimo and his family.

X. Mr. Prosdocimo was denied his right to due process and the effective assistance of counsel because the trial court's charge on accomplice liability relieved the Commonwealth of its burden of proving that Mr. Prosdocimo had a specific intent to kill, without objection by trial or appellate counsel.

XI. Mr. Prosdocimo was denied his right to due process and the effective assistance of counsel because the trial court permitted the jury to hear unfairly prejudicial evidence that Mr. Prosdocimo had been arrested and incarcerated and that his co-defendant had committed other murders and was sentenced to death for the same murder with which Mr. Prosdocimo was charged.

XII. Mr. Prosdocimo was denied his right to due process because of the prosecutor's misconduct in strategically postponing the disposition of perjury charges against Commonwealth witness Anthony Faiello to avoid his being disqualified as a witness.

XIII. All prior counsel were ineffective for failing to investigate and litigate the

issues presented in this amended petition.

XIV. Mr. Prosdocimo was denied his right to due process because of the cumulative prejudicial effect of the errors in this case.[16]

It is provided in 28 U.S.C. § 2244(d)(1) and (d)(2) that:
(1) A 1-year period of limitation shall apply to the application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the Pennsylvania Supreme Court denied leave to appeal on April 3, 1991. In Kapral v. United States, 166 F.3d 565 (3d Cir.1999), the Court noted that in the absence of the filing of a petition for discretionary review, the judgment becomes final when the time period in which to seek that review expires. Thus, the petitioner's conviction became final on July 2, 1991. The effective date of the Antiterrorism and Effective Death Penalty Act which imposed the one year statute of limitations is April 24, 1996 and thus it is applicable here. That statute provides that in cases where the conviction had become final prior to the statutory enactment, an individual has one year from that date to seek federal review.

_____

[16] See: Amended petition at pp.i-iii.

8

As noted above, 28 U.S.C. 2254(d)(2) provides that "the time during which a *properly* filed application for State post-conviction or other collateral review" is pending is excluded from this time calculation (emphasis added).

As relates to the instant case, Prosdocimo's second post-conviction petition was filed on April 17, 1993 and dismissed on October 4, 2005. When reviewing this dismissal, the Superior Court observed that in the latter petition, counsel for the first time raised the ineffectiveness of counsel claim. The Court continued:

> The PCRA, as it existed at the relevant time, provided that an issue was waived "if the petitioner failed to raise it and if it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter." 42 Pa.C.S. § 9544(b)(1988). According to this provision, then, Appellant's failure to raise the instant ineffectiveness claim when represented by new counsel in his direct appeal and with new counsel again in his first PCRA petition renders the issue waived under section 9544(b). **See Commonwealth v. Williams**, 660 A.2d 615, 617 (Pa.Super.1995)(indicating issues waived under section 9544(b) where second-time PCRA petitioner could have raised issues in his prior PCRA petition or on direct appeal)...[17]

The Court then continued to consider whether Prosdocimo's second petition could properly invoke an exception to the waiver rule. Specifically, the Court noted:

> First, the petitioner could overcome waiver if he could establish that the "alleged error has resulted in the conviction or affirmance of sentence of an innocent individual." 42 Pa.C.S. § 9543(a)(3)(ii)(1988). Second, a petitioner could overcome waiver if "the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a state procedural default barring federal habeas corpus relief." 42 Pa.C.S. § 9543(a)(3)(iii)(1988).[18]

After examining the record in the case, the Superior Court concluded that the petitioner did not qualify for the application of either exception. Furthermore, the Court concluded that

---

[17] See: Answer at p.1113.

[18] Id. at p.1114

9

petitioner's first PCRA counsel could not be deemed ineffective for failing to raise the issue since counsel is not mandated at the PCRA proceedings.[19] This conclusion is similar to the federal habeas conclusion that the alleged ineffectiveness of PCRA counsel is not a basis for federal relief. Trilett v. Freeman, 868 F.2d 106 (3d Cir. 1989).

Thus, the Superior Court concluded on June 4, 2007 that Prosdocimo's second post-conviction petition was subject to dismissal as the issues raised therein had been waived under Pennsylvania law.[20] As a matter of state procedural law, such matters are not subject to review here. Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997). For this reason, the conclusion is reached that his second post-conviction petition was not "properly" filed. In order to invoke this Court's jurisdiction, relief here should have had to been sought on or prior to April 23, 1997 (one year after the effective date of AEDPA). Since the instant petition was not filed until October 24, 2008, it appears to be time barred. However, it also appears that the Commonwealth has waived this defense.[21] Accordingly, we turn to the petitioner's claims.

B. Factual Background.

The background to this prosecution is set forth in the Superior Court's May 21, 1986 Memorandum quoting the determination of the trial court:

> Thomas Sacco was murdered on September 25, 1979 in front of "Butchies" bar at Market Street in the Golden Triangle section of Pittsburgh. The death was due to gunshot wounds.
>
> The evidence established that Tommy Sacco was standing outside of Butchies

---

[19] Id. at p.1115.

[20] Id. at p.1101.

[21] See: Answer at p.35.

when he was approached by a man with a hood over his head and a gun in his hand. He pointed the gun at Sacco, shot him two or three times and ran up the street. Prior to the killing, Bobby Bricker was in a car and he and Sacco had a discussion.

Fifteen or twenty minutes after Bicker left, Sacco was killed...  Ralph (Butchie) Tibbetts, the doorman at Butchies, observed the shooting and testified that at about four or five a.m. the morning of the killing, the defendant, William Prosdocimo["Eggy"], stopped at the bar and asked Butchie whether he knew who killed Sacco...

Charles "Monster" Kellington, who was present at Butchies the night of the killing, testified that he was personally aware of William Prosdocimo's involvement in the sale and distribution of drugs, particularly dilaudids...  Kellington also testified that Prosdocimo told him that Sacco owed him money in the amount of four to six thousand dollars... over which there had been arguments. The money was owed for consignment of dilaudids to Sacco which was to be paid to Prosdocimo after Sacco made the sales. Also, there were hard feelings between the two arising from a fight with Jack Lambert of the Pitttsburgh Steelers at the Happy Landing Nightclub in Pittsburgh. Kellington further testified there had been a fight in the summer of 1979 between Sacco and Prosdocimo on Winterburn Street in Greenfield, at which time Prosdocimo told Kellington, accompanying him, to bring his piece (a 357 magnum). Kellington was present at Prosdocimo's house when a call was received by Prosdocimo from Sacco and in the ensuing argument, Prosdocimo told Sacco to get out of town or he would kill him...

Following the phone call they drove to Winterburn Street and on the way Prosdocimo offered Kellington $1500 to beat up Secco.  On Winterburn Street Sacco was in the middle of the street with a bat and Prosdocimo tried to run him over but missed and Sacco began hitting the car with his bat. Eggy got out of the car, a Lincoln, and went after Sacco with his bat and the two began swinging at each other without making contact. Eggy then told Kellington to shoot Sacco; Kellington picked up the gun but saw a police car down the street approaching them and he threw the gun into the bushes. Sacco and Eggy were hurling obscenities at each other and Sacco was hollering that he was going to tell Fox (an undercover narcotics officer for the Pittsburgh Police). Kellington then left the scene but returned later and talked to Sacco telling him about the $1500 Eggy offered him and that Sacco should stop pushing Eggy as he was not going to take much more. The gun which he retrieved was owned by Robert Bricker who was an indicted co-defendant in the killing of Thomas Sacco. Kellington returned the gun to a cupboard in his apartment...

Kellington also learned from Eggy that he gave Tommy an additional $2000 worth

of dilaudids to appease him and the money for the dilaudids was never repaid and this brought the total drug-related debts to $6000...

One week before the Sacco killing, Bobby Bricker brought Miles Gabler (the confessed killer of Tommy Sacco and an escapee from the State Regional Correctional Facility at Greensburg) to Kellington's apartment.

During the week that followed, a meeting was arranged between Bricker, Eggy, and Gabler. Eggy said that Sacco had to go down (to be killed). He wanted to know if Gabler would handle it and Gabler agreed. They discussed possible sites for the killing, one of which was Butchies. Gabler had taken the magnum from the cupboard and was told by Kellington there were only three shells in it. Miles said he needed a driver and Eggy told him to get Eggy's brother Rickie to drive...

The night of the killing, Kellington arrived at Butchies at about 10:45 p.m. He saw Bricker, in his rose colored Lincoln, who told him to stick around as he might have something for him to do later. Tommy Sacco arrived and later they were in the club together with Butchie and Joe (Beans) Cancilla. The three others went outside, Kellington was on the phone, and the next thing he recalls was hearing three gunshots. Kellington said he looked out the window and saw Tommy lying on the ground in front of the door. Shortly thereafter, Kellington received a call from Bricker wanting to know if Sacco was dead. He could not confirm this and was told to stick around to see what he could find out and he later learned from the police that Sacco was dead. Kellington then went to Chasmars bar where Bricker said he would be waiting. There he saw Eggy, Miles Gabler, and Robert Bricker. Eggy asked Kellington if Sacco was dead and whether anyone had seen Gabler. Kellington responded that Sacco was dead and no one saw Gabler because he had a hood over his head. Bricker then explained how he got Tommy to go to Butchies by setting up a deal for transfer of dilaudids at a good price. He personally went to Butchies that night to get money from Tommy and to make sure that Tommy was there before Gabler came. Kellington was told by Eggy to take Gabler back to the apartment and that Eggy and Bricker would get rid of the gun... After the Sacco killing, Bricker took over Sacco's drug territory...

As to Prosdocimo's belief that Sacco was to become a police informant concerning Eggy's drug involvement, the Commonwealth presented evidence through a witness, Frank Faiello, a confessed drug dealer for Prosdocimo... In the summer of '79 he was personally turning in $2000 per day to Eggy for the sale of dilaudids. He testified that he knew Tommy Sacco and met him from time to time at Eggy's house when both were there receiving pills. Sacco was selling drugs for Eggy until the relationship ended, according to Eggy, because Sacco owed him $6000 and they had gotten into a fight (on Winterburn Street)..

On September 24, 1979, Frank was with Eggy when they went downtown (Pittsburgh) together where Eggy sent money to Las Vegas through Western Union. Thereafter they returned to Greenfield where they saw Sacco. Eggy said "well, take a good look at him because that's the last time you're going to see him." Sacco was killed that night...

Prior to the murder, Eggy told Faiello that Sacco was a snitch and after Sacco's murder, told him that he (Eggy) had Sacco killed... during the afternoon of the day of the murder, Faiello and his brother Tony were under police surveillance at Magee field in Greenfield. Tommy Sacco was also there and it was soon after Sacco left that the police chased, but did not apprehend, the Faiello brothers. Frank Faiello also testified Eggy had dropped him off at the field and was probably in the area when the chase occurred. Faiello believed Sacco was a snitch.

Anthony Faiello testified, after the court ruled, that although once charged with perjury, he was competent to testify since he had never been convicted... He stated that he was a dealer for Eggy Prosdocimo selling 100 to 200 dilaudids a day turning over $1500 to $2000 per day. He knew Prosdocimo's profession to be that of a drug dealer. Tony testified that at Magee field on September 24, the afternoon immediately before the murder, he had been talking to Sacco about Sacco's problems with Eggy. Sacco left and a couple of minutes later Eggy and Frank Faiello came up. Eggy said not to say anything to Sacco because he is a snitch...

Officer Barry Fox, an undercover narcotics agent for the Pittsburgh Police, testified that Tommy Sacco was a police informant... Sacco became an informant after police learned of his drug activities and began to pressure him. On occasion Sacco would be on a corner with friends near Mercy Hospital, upon seeing Fox he would leave the group and come to Fox's car to talk with him. On occasions he would make a showing of bravado by waving Fox's car down, and then in a loud and boisterous voice he would say "I'm going to snitch on everybody here" while getting into car. Fox testified that at this point in his life Tommy Sacco was abusing the drug quaalude quite a bit. Fox indicated to Sacco that he was concerned that everybody would be aware that he was talking to the police. Sacco said "I don't care, it doesn't matter, what are they going to do"... According to Fox, the main thrust of the information from Sacco was on the William Prosdocimo organization. At that particular time, in early September, Sacco was not receiving drugs for Prosdocimo but his goal was to get in a position to go straight to Prosdocimo's house to be able to be there whenever a large amount of drugs, specifically dilaudids, would be present so he would be able to notify the police. Sacco had numerous contacts with Officer Fox between March 1979 and the time of the killing in September...

The first defense witness was Miles Gabler, a habitual criminal about 40 years of

age. From the time he was a juvenile until the time of the Sacco killing, he had spent most of his life either in juvenile or adult institutions. The range of criminal activity was from burglary and car theft, to robbery and homicide. Gabler admitted he had killed Tommy Sacco... and testified that at the time of the killing, he was an escapee from the State Regional Correctional Facility at Greensburg. He was permitted to work outside on a truck and while in downtown Pittsburgh, he simply walked away... He made contact with Mr. Kellington through a mutual friend named Joey DeMarco. Mr. DeMarco took him to Kellington's apartment where he stayed for six or seven days...

Gabler said he knew Sacco from being in the Western Penitentiary together in 1968 or 1969 when he helped him to get along with other inmates since Sacco was a younger person and a first-time jailor... Kellington told Gabler he wanted him to kill Sacco for him as Sacco was an informant for the narcotics police and had seen Kellington kill a man. Gabler told Kellington that he wanted $10,000 to do the killing with $5,000 down. Kellington gave him the money and offered to get him a driver named Charlie Rossi. Gabler knew Rossi from being in the penitentiary with him. Kellington brought Rossi to the apartment where they discussed the killing. Charlie then took Gabler to Butchies because he knew that Tommy loafed there. The arrangement was that Gabler was to shoot Sacco behind Butchies and Charlie Rossi was to be the driver. Kellington said he wanted to be in Butchies on the phone so he could have an alibi where people could see him while Tommy was being shot...

Gabler stated he went to Butchies with Rossi the day of the killing and hid behind the building. Kellington was supposed to come out and tell him where Tommy was and Gabler was to shoot him there. While Gabler was hiding Kellington came out, and Gabler said he almost shot him because he was scared. Kellington told him to go out front as Sacco was there. Gabler ran along the fence and got to the front of the place where he saw Tommy with a couple of friends. He stated that he shot him three times and that as he was lying on the ground, Sacco looked up at him and said "why Miles" to which Gabler responded "because you are a rat" whereupon he shot him again and ran up the alley. Gabler stated he was wearing a blue sweatshirt with a thing that comes up like a hood over his head. Under the hood he had on a red wig which Kellington gave him...

As to the gun, Kellington gave him two guns, one being a 357 Magnum which he used to shoot Sacco. The backup gun was a .38 revolver. After the shooting he ran to the car driven by Charlie Rossi waiting for him at the Boulevard of the Allies. They headed toward the North Side, across the Sixth Street bridge and eventually to Lawrenceville. There they went to a bar called Dasti's and then to Wally Cress' house where he stayed over night. The next day he went to Kellington's place and learned from Kellington that Sacco was dead. That night Gabler stayed at

Kellington's apartment and it was at that time that Kellington gave him the additional $5,000 that was promised for the killing of Sacco...

Later he had a friend drive him to Wheeling, West Virginia, where he stayed at the Rodgers Hotel, using the alias of Frank Shannon. After about a week he returned to the Pittsburgh area to the home of Wally Cress. When his connection to the murder became known to the police, Gabler talked to the investigative officers and subsequently entered a guilty plea to the murder of Tommy Sacco. He stated, after he killed Sacco and was arrested for it, he felt bad about it and confessed to a priest and decided that he would be a witness to clear the record, Gabler also admitted to shooting a police officer in Jeanette, Pennsylvania some time after the murder of Sacco in March of 1980 when the police were trying to arrest him.

On cross-examination Gabler acknowledged that he had told Frank Faiello he was probably going to be indicted for two murders in West Virginia and the murder of Joe DeMarco, the latter occurring in October 1979. In response to the prosecutor's question he stated "Well, if I did, if I had killed Mr. DeMarco, what does it make any difference if I am admitting to Tommy Sacco, why wouldn't I admit Mr. DeMarco, I am still going to get the electric chair:...

Also on cross-examination, Mr. Gabler admitted he knew Mr. Bricker and that Mr. Bricker had visited him at the State Regional Correctional Facility at Greensburg. He testified Bricker wanted to maintain contact with him as he knew Gabler would be out soon and since they had a falling out he figured that Gabler might cause him some harm.

The defense called a number of witnesses to testify to the effect they had no knowledge of Sacco being a police informant and also that Sacco was fearful of Kellington and believed he was out to kill him...  In rebuttal, the Commonwealth called police witnesses who specified different occasions when Sacco gave information or promised to give information...  Also in rebuttal, the Commonwealth produced Charles Rossi, who was named by Miles Gabler as the driver of the automobile at the time of the Sacco killing. Mr. Rossi testified he was not the driver of that automobile. His testimony established he was a close friend of Bob Bricker, that Bricker had told him he had a man named Gabler shoot Mr. Sacco and he had been close by to see to it that the job would be taken care of and that later on, he was going to take care of Gabler. This information was given to Mr. Rossi within a day or two of the Sacco murder...[22]

C. Discussion.

---

[22] See: Answer at pp.508-514.

Woven throughout the fourteen issues which the petitioner seeks to raise here is a claim of ineffective assistance of counsel.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

I. The first issue which the petitioner raises here is that he was denied his right to due process, to confront his accusers and the effective assistance of counsel when the prosecution and trial counsel failed to correct materially false testimony by key Commonwealth witnesses Charles Rossi and Anthony Faiello.

As set forth in the amended petition at p.10-11,

During the defense's case-in-chief, Miles Gabler directly refuted the testimony of one of the Commonwealth's chief witnesses, Charles Kellington, by testifying that Mr. Kellington, not Mr. Prosdocimo or Mr. Bricker, paid him to kill Mr. Sacco. To attack Mr. Gabler's credibility, the Commonwealth called Mr. Rossi to rebut Mr. Gabler's claim that Mr. Rossi was his driver. Thus, Mr. Rossi was a crucial witness for the Commonwealth.

During cross-examination, Mr. Rossi made two statements which were known by the prosecution to be false [regarding the grant of use immunity to him and testifying that he was unaware of such matters. TT 2/2/81 at p.85. Thereby, lending an air of credibility to his testimony].

and further testifying that he was unaware of Killington's involvement in the Norman McGregor murder prior to entering his guilty plea to federal racketeering charges " creat[ing] the impression with the jury that his decision to cooperate with law enforcement was wholly independent of Mr. Kellington's decision to cooperate" (Petition at p.12).

As to Commonwealth witness Faiello, defense counsel thoroughly questioned him regarding his prior record and the advice he received from his counsel to cooperate in other prosecutions (TT.5 pp.47-49).[23]

In petitioner's direct appeal, the issue of the Commonwealth's knowing use of false testimony  was rejected by the Superior Court as procedurally waived and while raised in the post-

---

[23] Record references marked "TT_p_" refer to the volume and page of the transcript of the petitioner's trial which commenced on January 26, 1982.

conviction appeal to the Superior Court was not raised in Prosdocimo's petition for allowance of appeal to the Pennsylvania Supreme Court. Accordingly, the issue is procedurally defaulted here. Coleman v. Thompson, 501 U.S. 722,750 (1991).

In addition, while defense counsel might have confused the issue concerning what immunity, if any, had been granted to Rossi (TT.8, pp.84-86, 91-92), Rossi himself explained the immunity agreement as he claimed to have understood it. As to Faiello, the cross-examination clearly demonstrated the witness' potential for bias (TT 4pp.6-10). Additionally, the Court in its instructions adequately informed the jury of how to make credibility determinations specifically addressing the conflicting testimony of Faiello, Rossi and Kellington (TT.8 pp.25-26). Thus, under the circumstances, the petitioner has not suffered any prejudice and for this reason, counsel's performance cannot be deemed inadequate.

II. Suppression of evidence favorable to the defense.

In his second issue, the petitioner contends he is entitled to relief on the grounds that the Commonwealth knowingly suppressed evidence favorable to the defense, specifically evidence which would have undermined the credibility of Commonwealth witness Faiello. At petitioner's trial, Faiello was thoroughly questioned and cross-examined concerning his motivation for testifying. However, since this issue was procedurally defaulted by not being raised in the state appellate courts, petitioner is barred form raising it here. Coleman, supra.

III. Denial of due process and confrontation of the witnesses who testified against him.

Specifically in this regard, petitioner essentially raises his First and Second issues which have been discussed above and attempts to combine these claims for their cumulative effect.[24]

---

[24] Amended petition at p.28.

However, as discussed above, both of these claims are meritless, and thus this claim is likewise without merit.

IV. Juror prejudice.

The petitioner alleges that one of the jurors was prejudiced against him because of the juror's disapproval of the petitioner having associated with that juror's nephew. Subsequent to trial, the defense obtained information from third parties that juror Pison has some familiarity with the petitioner which he failed to disclose during voir dire.[25] This issue was not raised in the state courts and for this reason was procedurally defaulted and not subject to review here. Coleman, supra.

V. Repeated prosecutorial misconduct during closing argument, without objection by defense counsel.

This issue was issue IX in the petitioner's direct appeal. However, in presenting that issue, it was solely presented as one of state law.[26] Because the federal claim was not presented to the state courts for review in the first instance, it is not a basis for relief here. Baldwin v. Reese, 541 U.S. 27 (2004); Greene v. Palakovich, 606 F.3d 85, 93 (3d Cir.2010).

VI. The petitioner alleges he was denied due process and effective counsel as a result of the prosecutor intimidating defense witness Donald Prosdocimo when he was cross-examined about his own credibility and possible criminal dealings. This issue was raised in petitioner's direct appeal as one exclusively based on state law.[27] In addition, the Superior Court concluded

---

[25] Amended petition at pp.30-33.

[26] See: Answer at pp.348-351.

[27] Id. at pp.332-334.

19

that this issue was procedurally waived on appeal.[28] Prosdocimo again raised this issue in his post-conviction petition appeals, based exclusively on state law.[29] Accordingly, this issue is subject to dismissal for failure to alert the state courts that a federal issue was being raised. Greene v. Palakovich, supra., and also as having been procedurally defaulted.

VII. Petitioner also alleges he was denied due process and effective counsel as a result of the court permitting conflicted counsel to assist unprepared successor counsel rather than granting a continuance. Specifically, three days prior to the commencement of trial, the Commonwealth notified defense counsel of its intention to call Frank Faiello and Anthony Faiello as prosecution witnesses. Defense counsel who had previously represented Faiello on related charges was conflicted and had to be replaced. The court would not permit discharged defense counsel to sit at counsel table and consult with newly engaged counsel, but did permit them to confer out of the presence of the jury. When successor counsel sought a continuance to prepare for trial, the request was denied, allegedly resulting in trial counsel being unprepared although he had been involved in the case for six weeks prior to trial. The petitioner acknowledged that "although this claim was not raised before the Superior Court, Mr. Prosdocimo is not foreclosed from receiving federal review because his claim of actual innocence is a gateway through which he may obtain review of procedurally defaulted claims..."[30]

Clearly, by his own admission the petitioner has failed to raise this issue in the state appellate courts. Thus, petitioner is entitled to relief only if he can demonstrate "that it is more

---

[28] Id. at p.520.

[29] Id. at pp.764-768, 874-879.

[30] See: Amended petition at p.66.

likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Schlup v. Delo</u>, 513 U.S. 298,327 (1995). That is, but for the alleged violation, no jury could have found guilt beyond a reasonable doubt. As fully discussed above in the trial court's summary, there is no way that such a conclusion could have been reached, especially in light of the fact that counsel had six weeks of time to prepare for the trial.

VIII. Petitioner further alleges trial counsel was ineffective for failing to discover the existence of potential witness, William Incardona, who would have testified that he lived with the petitioner in Florida thus contradicting the Faiellos' testimony that they received their drug supplies from the petitioner, in Pittsburgh, on an almost daily basis; for failing to discover potential testimony of Sam Rende which would have related the fact that Kellington had unsuccessfully solicited alibi testimony from Prosdocimo regarding a Florida murder charge creating an incentive for him to testify falsely against Prosdocimo; by failing to discover the testimony of Charles Bonasorte at the trial of a co-defendant of petitioner's which would have contradicted the testimony of Kellington, and that trial counsel failed to discover the prior testimony and statements of Faiello which would have contradicted his trial testimony.

This issue was raised in the post-conviction appeal and rejected by the Superior Court as merely cumulative of prior evidence. In its opinion denying post-conviction relief, the trial court found that any such testimony would merely be cumulative and the Superior Court affirmed on the same grounds.[31] This conclusion is supported by the record. As a factual finding the conclusion of the state court is entitled to a presumption of correctness. 28 U.S.C.2254(e)(1). Nor is this conclusion an unreasonable application of federal law by the state courts, and for this

---

[31] See: Answer at pp.719 and 825.

reason, does not present a basis for relief. 28 U.S.C. 2254(d)(1). In addition, we note that this alleged ineffectiveness was also raised as a matter of state law and as such does not provide a basis for relief here. <u>Greene v. Palakovich</u>, <u>supra</u>.[32]  Thus, this claim is meritless.

IX. Additionally, petitioner allege he was denied due process through the admission of evidence of the Prosdocimo family being involved in drug trafficking. Specifically in this regard, the petitioner alleges that it was prejudicial error to permit the prosecution to introduce evidence at trial regarding the petitioner and his associates' drug dealings over a period of years in order to establish a motive for the Sacco killing.

The substance of this claim was presented as the petitioner's first issue in his direct appeal.[33] However, the issue was raised exclusively in the context of Pennsylvania law and as such did not put the state courts on notice of any federal claims, and for this reason, the issue is not properly before this Court. <u>Greene v. Palakovich</u>, <u>supra</u>.[34] In addition, alleged evidentiary errors do not provide a basis for relief unless they resulted in fundamental constitutional violations. <u>Jimenez v. Walker</u>, 458 F.3d 130,147 (2d Cir.2006). No such showing is made here, rather as the Superior Court observed:

> Evidence of other unlawful activity is admissible to establish: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design where evidence of one crime tends to prove the other; or (5) the identity of the person charged...

> Our review of the record discloses that the trial court properly balanced the competing factors: the need for the evidence of other crimes; the convincing

---

[32] Id. at p.742.

[33] Id. at pp.315-324.

[34] Id.

evidence of appellant's other criminal activity; the strength of the connection between the other criminal activity and the crimes at issue in the case at hand and the degree to which the jury might be roused by the evidence of overmastering hostility...[35]

Thus, this claim does not provide a basis for relief.

X. The petitioner also asserts he was denied due process as a result of the jury instruction on accomplice liability relieving the Commonwealth of its burden of proving Prosdocimo's specific intent to kill.

This issue was not raised in any context in the state appellate courts and for this reason, the petitioner has failed to exhaust the state court remedies on this issue. However, since at this juncture any further proceedings in state court is time barred, the issue is procedurally defaulted. Coleman, supra.

XI. Petitioner also claims he was denied due process and effective counsel because the jury was permitted to hear prejudicial evidence of his arrest and incarceration and that his co-defendant had been sentenced to death for the instant homicide.

This issue was raised in the Commonwealth courts in the petitioner's direct appeal as issue XI and in his second post-conviction petition as issue II. In the direct appeal, this issue was raised on the basis of both state and federal law. Specifically, it was alleged that as a result of evidence of his incarceration he was denied the presumption of innocence under Estelle v. Williams, 425 U.S. 501 (1978) as well as under provisions of state law.[36]

Officer Pilardi who had been called as a defense witness on cross-examination testified

---

[35] Id at pp.515-516.

[36] See: Answer at pp.352-353.

that he went to Prosdocimo's home at the request of petitioner's brother to determine what the police were doing at the house (TT6 pp.96-97). In response to an inquiry as to what he learned, the Officer gratuitously testified that the petitioner was being arrested (TT6 pp.96-97). Defense counsel's immediate motion for a mistrial was denied (TT6 pp.97-102). When reviewing this issue, the Superior Court concluded that while the admission of the statement was error, that error was harmless under the circumstances. Specifically, the Court concluded that during cross-examination, the Commonwealth reasonably attempted to disclose Pilardi's ties to the Prosdocimo family, a matter which reflected on his credibility.[37]

In Williams, supra. while reviewing the implications of a defendant proceeding to trial in prison garb, the Court noted that the presumption of innocence is inherent in the requirement of a fair trial and that it is necessary to eliminate the possible introduction of extraneous factors which might cause the presumption of innocence to become weakened. In United States v. Allen, 425 F.3d 1231 (9th Cir.2005), cert. denied 547 U.S. 1012 (2006) the Court held that an isolated reference to the defendants prior incarceration did not warrant a mistrial. Although a mistrial was denied in Allen, the trial court did provide the jury with a curative instruction, and none was offered here. However, it would not be erroneous to conclude that perhaps it was advantageous to the petitioner that this matter not again be brought to the attention of the jury as the Pennsylvania appellate courts concluded that error was harmless.

In addition, in moving for a mistrial, defense counsel clearly provided effective representation.

Petitioner's second argument, that testimony relating to his co-defendant having been

---

[37] See: Answer at pp. 518-519.

sentenced to death for the charged homicide, was raised primarily as one of state law with a

passing reference to <u>Leroy v. Government of Canal Zone</u>, 81 F.2d 914 (5th Cir.1936).[38] The latter

case held that where two or more persons are charged with the same crime but prosecuted

separately, the judgment in one case is not admissible at the subsequent trial.

During the defense case, Miles Gabler, the admitted murderer of Sacco, was called upon to

testify.[39] Before he testified, the Court granted him use immunity from any matters about which he

testified (TT.5 p.7), and then at Gabler's request withdrew that grant (TT5 p.9). Gabler

implicated Ross and Kellington as the ones who paid him to kill Sacco (TT5 pp.69-70, 94, 96)

and excluded implicating the petitioner in the incident. At the same time, however, the witness

who was essentially uncontrollable implicated others including Bricker and Kellington in a

number of other homicides (TT5 p.93).

As the Superior Court observed on the direct appeal,

> Appellant next claims that the trial court erred by permitting the Commonwealth to
> establish, during cross-examination of Gabler that Bricker, a co-defendant, had
> been accused of other murders and had been convicted of other crimes and that the
> [trial] court then compounded the error by refusing the motion for a mistrial...

> Whatever tends to show the interest of a witness in a case is competent by way of
> cross-examination...[40]

We note that evidentiary determinations rest within the sound discretion of the trial court

unless unsupported by the record. <u>Sumner v. Mata</u>, 449 U.S. 539 (1981). In the instant case, the

petitioner had called Gabler as a defense witness and the fact of his involvement with a slew of

---

[38] See: Answer at pp.1025-1029.

[39] See: TT 5 pp. 11-184.

[40] See: Answer at p.522.

25

unsavory characters including individuals who testified at the trial and who were involved in various other homicides was relevant to establishing his credibility and draws support from the record.  As summarized above, there was no evidence that Gabler knew of the petitioner;'s involvement in the Sacco homicide since Gabler had been solicited by Kellington. Although Kellington testified that he engaged Gabler to carry our Prosdocimo's requested exectution of Sacco.

However, the petitioner's primary objection was to the testimony of prosecution witness Kellington who on cross-examination testified that Bricker had been convicted of the instant offense and that the death penalty had been imposed.[41]

This issue was dismissed by the Superior Court in the second PCRA has having been procedurally defaulted as it was not raised in the first PCRA petition. The Court also concluded that the issue was never raised in the lower court proceedings.[42]

It would appear that the challenge to Kellington's testimony did not arise prior to petitioner's second post-conviction filing. Since the Superior Court determined that this issue was procedurally defaulted, it was determined on state law grounds and thus is not properly before this Court for disposition. Coleman, supra.

XII. The petitioner's twelfth issue is that he was denied due process as a result of the prosecutor's misconduct in postponing disposition of perjury charges against Commonwealth witness Faiello, to avoid his disqualification as a witness. Specifically, Faiello had perjury charges pending against him and as part of his cooperation in the prosecution of the Sacco homicide, the

---

[41] See: TT 3  pp.130-133, 173-174.

[42] See: Answer at p.1111-1118.

Commonwealth agreed to *nolle pros* the perjury prosecution. This issue was raised as the sixth issue in petitioner's direct appeal, however, it was raised and decided solely as a matter of state law, and for this reason is not properly before this Court. Greene v. Palakovich, supra.

XIII. In his thirteenth issue, the petitioner alleges that all counsel were ineffective for failing to investigate and litigate the issues presented in his federal petition. Specifically, he alleges that "as discussed in Claims I through XII, these claims are meritorious, and prior counsel had no reasonable basis for failing to investigate and/or litigate any of these issues."[43]  As has been discussed above, none of the issues which the petitioner seeks to raise here are meritorious, and therefore counsel cannot be deemed ineffective for failing to pursue them, if in fact that did fail to do so. For this reason, the claim fails to demonstrate that counsels' representation fell below an objective standard of reasonableness. Jermyn v. Horn, 266 F.3d 257 (3d Cir.2001).

XIV. The petitioner's fourteenth and final claim is that he was denied his right to due process because of the cumulative errors during his prosecution. The allegations of error made here have been discounted and for this reason, there is no cumulative effect to form a basis for relief.

D. Conclusion.

After reviewing the record and all the allegations made, it cannot be said that Prosdocimo's counsel was ineffective as a matter of federal law or that his conviction

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

---

[43] See: Amended petition at p.97.

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).

In addition, the petitioner has failed to make any reasonable demonstration of actual innocence and for this reason <u>Schlup</u> <u>supra</u> is not applicable here nor on the record here could such a conclusion be reached.

Accordingly it is recommended that the petition of William Prosdocimo for a writ of habeas corpus be dismissed, and that reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Within fourteen (14) days after being served, any party may serve and file written objections to the Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: October 4, 2010                    United States Magistrate Judge