IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM PROSDCOCIMO,            )
    Petitioner,                 )
                                )
    vs.                         )   Civil Action No. 08-1500
                                )   Judge Conti
JEFFREY A. BEARD, Ph.D., et al.,)   Magistrate Judge Mitchell
    Respondents.                )

MAGISTRATE JUDGE'S SUPPLEMENT TO REPORT AND RECOMMENDATION FILED
ON OCTOBER 4, 2010

I.    RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed by Petitioner William Prosdocimo be denied and that a certificate of appealability be denied.

II.    REPORT

This is a Supplement to the Report and Recommendation to the Report and Recommendation filed on October 4, 2010 (ECF No. 69), in order to address certain points made in the objections filed by Petitioner on October 18, 2010 (ECF No. 70). The Report and Recommendation ("R&R") concluded that the following claims were barred from review based upon the doctrine of procedural default: Claims II, IV, V, VI, VII, IX, X, XII. Petitioner contends that, pursuant to Schlup v. Delo, 513 U.S. 298 (1995), he has asserted an "actual innocence" gateway claim that allows these claims to be considered on the merits. In his objections, he complains that the R&R failed to address the actual innocence exception. For the reasons that follow, the Court should conclude that Petitioner's claim does not meet the standard of Schlup.

    Schlup Actual Innocence Standard

The Supreme Court has explained that:

> As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error. See Murray v. Carrier, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Engle v. Isaac, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The rule is based on the comity and respect that must be accorded to state-court judgments. See, e.g., Engle, supra, at 126-129, 102 S.Ct. 1558; Wainwright, supra, at 89-90, 97 S.Ct. 2497. The bar is not, however, unqualified. In an effort to "balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," Schlup, 513 U.S., at 324, 115 S.Ct. 851, the Court has recognized a miscarriage-of-justice exception. "'[I]n appropriate cases,'" the Court has said, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration,'" Carrier, supra, at 495, 106 S.Ct. 2639 (quoting Engle, supra, at 135, 102 S.Ct. 1558).
>
> In Schlup, the Court adopted a specific rule to implement this general principle. It held that prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513 U.S., at 327, 115 S.Ct. 851. This formulation, Schlup explains, "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." Ibid. (quoting McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)). In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims. Yet a petition supported by a convincing Schlup gateway showing "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error"; hence, "a review of the merits of the constitutional claims" is justified. 513 U.S., at 317, 115 S.Ct. 851.

House v. Bell, 547 U.S. 518, 536-37 (2006).

In House, the Supreme Court held that the Schlup standard was satisfied; it is the only case in which the Supreme Court has reached this conclusion. The petitioner, Paul Gregory House, had been convicted and sentenced to death for the murder of Carolyn Muncey, a neighbor

who he barely knew, based on the following evidence: he was seen near the spot where the victim's body was eventually found, he had scratches on his arms and hands and a bruise on his knuckle, he made a false statement concerning his whereabouts on the night of the murder, semen consistent (or so it seemed) with his was present on the victim's nightgown and panties, and small bloodstains consistent with her blood but not his appeared on the jeans he was wearing. In his federal habeas proceedings, he presented the following new evidence: DNA testing established that the semen on the victim's nightgown and panties came from her husband (who had admitted having sexual relations with his wife that night); a forensic expert testified that the blood on his pants probably did not come from the victim and that the pants were improperly transported to the FBI in the same container as the blood samples, which had spilled from the vials; and there was a possibility that the victim's husband could have been the murderer because he had the opportunity to commit the crime, witnesses who were friends of his admitted that he regularly abused his wife and two other witnesses heard him confess to the crime around the time of House's trial. The Court recognized that some aspects of the State's evidence still supported an inference of guilt. Nevertheless, based on all of the evidence, the Court concluded that "this is the rare case where—had the jury heard all the conflicting testimony—it is more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt." Id. at 554.

  The Court of Appeals for the Third Circuit has held that "a petitioner must support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004). The court rejected

Hubbard's proffered evidence because it consisted only of his own sworn testimony: "A defendant's own late-proffered testimony is not "new" because it was available at trial. Hubbard merely chose not to present it to the jury. That choice does not open the gateway." Id. at 340. Thus, it is clear that the "new" evidence must be evidence that was not available at the time of trial, not merely evidence that was available but was not presented.

The court has further stated that:

> Second, only if a petitioner first puts forth new evidence not considered by the jury does a court ask "whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Hubbard, 378 F.3d at 340. In making this second inquiry, a court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial," and "assess how reasonable jurors would react to the overall, newly supplemented record."

Goldblum v. Klem, 510 F.3d 204, 225-26 (3d Cir. 2007) (quoting House, 547 U.S. at 538). In Goldblum, the petitioner was convicted of murdering the victim, who was sitting in the driver's seat of a car, by stabbing him from the back seat while his co-defendant (Miller) sat in the passenger seat. The Court of Appeals concluded that, even assuming that the two pieces of "new reliable" evidence Goldblum presented were in fact new and reliable, he still failed to meet the second step of the inquiry (that it was more likely than not that no reasonable juror would have convicted him) because: 1) Dr. Wecht's testimony regarding the pattern of the blood spatter did not rule out the Commonwealth's theory; and 2) Miller's "confession" was that he participated along with Goldblum in the murder. The court concluded that: 1) the new evidence did not eliminate the possibility that the crime occurred as set forth by the prosecution at trial; 2) the defense put on strong circumstantial evidence at trial that the blood spatter indicated that the

4

front-seat passenger (Miller) did the stabbing, so there was no reason to believe that Dr. Wecht's expert testimony on this point would have led to a different conclusion; and 3) the new evidence did not undermine the evidence of Goldblum's motive to commit the murder or remove him from the scene of the crime. Id. at 234. See also Albrecht v. Horn, 485 F.3d 103 (3d Cir. 2007) (Albrecht was convicted of multiple murders for setting the family home on fire, but did not meet the actual innocence exception with new fire science evidence that the fire could have been accidental in origin because the expert's opinion did not rule out the possibility that the fire was set intentionally, his evidence did nothing to undermine the motive, and was similar to testimony presented at trial).

In this case, Petitioner was convicted of contracting for the murder of Thomas Sacco based primarily on the testimony of Charles Kellington, Anthony Faiello and Frank Faiello. They testified that Petitioner wanted Sacco killed because Sacco owed him approximately $6,000 in drug money, because they had had a fight in Greenfield and because Petitioner believed that Sacco was a police informant. The defense attacked the credibility of all of these witnesses, citing their criminal records, involvement in drug sales and plea bargains. The defense also provided the testimony of Miles Gabler (the actual shooter), who stated that it was Kellington, and not Petitioner, who paid him to kill Sacco.

Petitioner presents the following "new" evidence to support his actual innocence gateway claim: 1) the affidavit of Joseph Prosdocimo, Petitioner's brother (App. Ex. 1), who recounts that, about twenty years after Petitioner was convicted, he ran into Anthony Faiello at a nightclub and Anthony Faiello admitted to him that he and his brother Frank Faiello lied when they testified against Petitioner at trial and that they did so because the police were holding something

5

over them to induce them to say that Petitioner got rid of Sacco because he knew Sacco was an informant; 2) a recent statement by David Osborne, an Assistant Federal Defender with the office representing Petitioner in this case, relating that Anthony Faiello admitted that, in 1981, the police threatened to file criminal charges against for firebombing a house if he did not implicate Petitioner in the Sacco murder (App. Ex. 9); 3) criminal records showing that Anthony Faiello had a much more extensive history of convictions than the ones he admitted to in his testimony (App. Ex. 5); 4) a copy of Anthony and Frank Faiello's plea agreement, which reveals that Anthony misrepresented its conditions (App. Ex. 6); 5) two prior statements given by Anthony Faiello (App. Exs. 26, 27) in which he denied knowing of Petitioner's involvement in the Sacco murder, as well as the declaration of trial counsel Gary Zimmerman that he was unaware of these prior statements (App. Ex. 3); 6) the declaration of William Incardona, stating that Petitioner was in Fort Lauderdale, Florida from the winter of 1978 until May of 1979 (App. Ex. 22), which contradicts the testimony of Anthony and Frank Faiello that he was in Pittsburgh; 7) the testimony of Charles Bonasorte, owner of the Chasmar Bar, given in the trial of Robert Bricker (prior to Petitioner's trial) that he closed the bar at about 1:00 a.m. on the night of the murder (App. Ex. 24), which would refute Kellington's testimony that he, Bricker and Gabler met with Petitioner at the bar sometime after 2:00 a.m., as well as the declaration of trial counsel Gary Zimmerman that he was unaware of Bonasorte's testimony (App. Ex. 3); and 8) the declaration of Sam Rende that Kellington had a motive to falsely accuse Petitioner (namely, because Petitioner refused to provide a false alibi for Kellington for another murder, a request sent to him via Rende) (App. Ex. 23), as well as the declaration of trial counsel Gary Zimmerman that he was unaware of Rende's information (App. Ex. 3).

First, Petitioner has not presented "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" or evidence that is "new" in the sense that it was unavailable at the time of trial. None of his evidence is scientific or physical and the accounts are no more or less "trustworthy" than those presented at trial. Rather, Petitioner presents: additional reasons why the jury might have discredited the testimony of Kellington and Frank and Anthony Faiello; additional information about plea bargains they had received or criminal activities in which they had engaged; and additional reasons why they might have given testimony unfavorable to him. Petitioner has failed to demonstrate that his evidence meets the first prong of Schlup.

Moreover, even assuming that his evidence met the first prong of Schlup, he has failed to demonstrate that it could meet the second prong, namely that "it is more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt." As in the Goldblum and Albrecht cases, Petitioner's new evidence does not eliminate the possibility that the crime occurred as set forth by the prosecution at trial, the defense challenged the credibility of Kellington and Anthony and Frank Faiello, so there is no reason to believe that these additional pieces of information would have led to a different conclusion, and the new evidence does not undermine the evidence of Petitioner's motive to commit the murder. Petitioner has not demonstrated that this is the "rare case" met in House but not met in Goldblum, Albrecht or Hubbard.

For these reasons, as well as those stated in the Report and Recommendation filed on October 4, 2010 (ECF No. 69), it is recommended that the Petition for Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 filed by Petitioner William Prosdocimo be denied and that a certificate of appealability be denied.

Within the time specified in the Notice of Electronic Filing, any party may serve and file written objections to this Supplement to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

s/Robert C. Mitchell_____  
ROBERT C. MITCHELL  
United States Magistrate Judge

Dated: November 3, 2010