IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM PROSDOCIMO, | ) | |
|     Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-1500 |
| | ) | |
| JEFFREY BEARD, et al., | ) | |
|     Respondents. | ) | |

## MEMORANDUM AND ORDER

On October 24, 2008, petitioner William Prosdocimo ("petitioner" or "Prosdocimo"), by his counsel, the Federal Public Defender for the Western District of Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of first degree murder and the life sentence imposed on November 7, 1983, at No. CC198104540, in the Court of Common Pleas of Allegheny County, Pennsylvania, arising out of the September 25, 1979 shooting death of Thomas Sacco. On August 10, 2009, Prosdocimo, now represented by the Federal Community Defender Office for the Eastern District of Pennsylvania, filed a counseled amended petition (ECF No. 55) and moved to stay the case so that he could exhaust state court remedies. On July 8, 2010, the case was reopened, but petitioner did not elect to amend the petition further. Respondents filed an answer on August 12, 2010 (ECF Nos. 60-66) and petitioner filed a reply brief on September 9, 2010 (ECF No. 68).

On October 4, 2010, United States Magistrate Judge Robert C. Mitchell filed a Report and Recommendation ("R&R")(ECF No. 69), recommending that the amended petition be dismissed and that a certificate of appealability be denied. Service of the R&R was made on the parties, and petitioner filed objections (ECF No. 70) on October 18, 2010. In response to those objections, the magistrate judge filed a supplement to the R&R (ECF No. 71), specifically to

address petitioner's contention that, pursuant to Schlup v. Delo, 513 U.S. 298 (1995), he had asserted an "actual innocence" gateway claim that allowed his procedurally defaulted claims to be considered on the merits. In the supplement the magistrate judge concluded that petitioner's claim did not meet the standard of Schlup. On November 19, 2010, petitioner filed objections to the supplement (ECF No. 72).

In his objections, petitioner raises a number of issues, some of which will be discussed herein. Any issues raised by petitioner and not discussed herein are summarily overruled because the issues were adequately addressed in the R&R.

Petitioner argues that the magistrate erred in concluding that claim I (that he was denied his right to due process, to confront his accusers and to the effective assistance of counsel when the prosecution and trial counsel failed to correct materially false testimony by key Commonwealth witnesses, Charles Rossi ("Rossi") and Anthony Faiello ("Faiello")) was procedurally defaulted. The magistrate judge found that claim had not been presented to the Pennsylvania Supreme Court in 1990 on appeal from the denial of Prosdocimo's Post Conviction Hearing Act ("PCHA") petition (R&R at 17-18). It would appear that petitioner is correct, but only with respect to the claim involving Rossi's testimony. See Answer Ex. 26 at 37-39. Nevertheless, the R&R contained a review of this claim on the merits. The magistrate judge concluded that Rossi explained the immunity agreement as he claimed to have understood it and that the trial court's instructions adequately informed the jury about how to make credibility determinations, specifically addressing the conflicting testimony of Faiello, Rossi and Charles Kellington ("Kellington"). (R&R at 18.)

With respect to the claim involving false testimony by Faiello, petitioner never raised it in his state court proceedings. In his direct appeal, he argued that the Commonwealth intentionally circumvented the version of the Pennsylvania Disqualification Act in effect at the time, 1976 PA. LAWS 720-21,[1] by dismissing perjury charges against Faiello in exchange for his testimony. (Answer Ex. 10 at 30-31.) The superior court rejected this claim (Answer Ex. 12 at 14-15). The superior court affirmed the trial court's holding that Faiello was competent to testify because, although he had been charged with perjury, he had not been convicted of the charges (Answer Ex. 9 at 25). This claim was raised solely under state law and it is not the issue petitioner raises herein.

In his PCHA petition and on appeal, petitioner raised claims involving the Commonwealth's use of false testimony in three instances (regarding the "Magee Field" incident, Rossi's testimony and the "Pilardi Report"), but he did not contend that the Commonwealth had failed to correct Faiello's statements regarding his criminal record, or allege that trial counsel was ineffective for failing to raise this issue. See Answer Ex. 17 at 2. Therefore, this portion of claim I is unexhausted and procedurally defaulted. In his reply brief, petitioner argued that his Schlup evidence allowed the court to reach the merits of this claim. For the reasons explained below, this argument is without merit.

Petitioner argues that the magistrate judge applied the wrong standard to claim I, which is raised under Napue v. Illinois, 360 U.S. 264 (1959). Petitioner asserts he does not have to establish that he suffered "actual prejudice" as a result of Rossi's testimony (R&R at 18), but

---

[1] The Pennsylvania Disqualification Act was amended in 1993 and now permits convicted perjurers to testify, but provides that "such conviction may be shown for the purpose of affecting

3

only the existence of "any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976).

As an initial matter, petitioner is incorrect about the standard. The Supreme Court had utilized three different standards depending upon the type of claim involving the discovery after trial of information favorable to the accused that had been known to the prosecution, but not the defense, as recognized in Agurs. The Court rejected this approach in United States v. Bagley, 473 U.S. 667 (1985), however, and held that a single standard applies: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682.

More importantly, petitioner did not demonstrate that he meets this standard. On direct examination by Assistant District Attorney James Lees, Rossi stated that he entered into a plea bargain with the District Attorney of Allegheny County and the United States Attorney for the Western District of Pennsylvania in which he pleaded guilty to participating in two murders and provided information regarding the Sacco murder and three others. (TT8 at 79-80, 82.) During cross-examination by petitioner's trial counsel, Gary Zimmerman, Rossi testified as follows:

> Q: Now, sir, you have told us that you have pled guilty in Federal Court to a racketeering statute, and the basis or predicate for that was two murders. Is that correct?
>
> A. That's true.
>
> Q. And have you received immunity from the Federal Government?
>
> A. Immunity?

---

the person's credibility." 42 PA. CON. STAT. ANN. § 5912.

> Q. Yes, from prosecution to other crimes that you are testifying about. In other words, have you been granted immunity by the Federal Government?
>
> A. Well, there is an immunity, from what I understand, on the one crime, and that's the Mitchell case.
>
> Q. Has the Commonwealth of Pennsylvania granted you immunity against the use of your testimony or your words which you may speak in court or in interviews so that they won't be used against you in any subsequent prosecution of you?
>
> A. Not that I know of. It's never been brought up to me.
>
> Q. Has there been any promises made to you by Mr. Lees or anybody form the District Attorney's Office that you wouldn't be prosecuted in the State of Pennsylvania with Mr. McGregor's murder?
>
> A. No, none that I know of.
>
> Q. Have there been any promises made by the State of Pennsylvania or any other county that you will not be prosecuted for the murder of Mr. Pike?
>
> A. Not that I know of.
>
> Q. Well, as you are sitting here today do you expect to be prosecuted for the murder of Norman McGregor?
>
> A. Not the way I understand it. The way I understand it, the [RICO] Act covers my prosecution on the Pike and McGregor case.
>
> Q. Okay, but here you are sitting here today telling us that somebody told you that you won't be prosecuted for your murder of Norman McGregor. Is that correct?
>
> A. No, I didn't say that, you said that.

(TT8 at 84-86.) Although Attorney Zimmerman injected some confusion into the matter, Rossi clarified his understanding of the agreement and the jury heard that Rossi been granted immunity.

Petitioner also claims that Rossi misled the jury during the following exchange:

> Q. And when you part that murder [Norman McGregor] with Mr. Kellington you pled guilty to that murder, do you know that?
>
> A. No, I did not participate in anything with Mr. Kellington.
>
> Q. Okay, but you pled guilty in this racketeering statute on the basis that you were involved in the McGregor murder. Is that correct?
>
> A. I pled guilty separate from Mr. Kellington and before I even knew Mr. Kellington was involved in that particular crime.
>
> Q. All right. Nevertheless, sir, you pled guilty?
>
> A. To the McGregor case, yes.
>
> Q. And you also tell us that you have admitted your guilt concerning the murder of Mr. Pike?
>
> A. Yes.

(TT8 at 91-92.) The statement "before I even knew Mr. Kellington was involved in that particular crime" was elicited by Attorney Zimmerman, was not explored further and is, therefore, unexplained. The meaning and significance of this statement is not part of the record, and the statement has not in any way shown to have prejudiced petitioner.

Judge Tamilia instructed the jury as follows:

> Now, concerning credibility, there are two matters that I think is proper for the Court to bring to your attention. In deciding whether or not to believe Mr. Kellington and Mr. Anthony Faiello, Frank Faiello, Mr. Rossi, you should be guided by the following principles which apply to the testimony of persons receiving special treatment from the Commonwealth. You should examine their testimony to determine if it is colored in such a way so as to implicate the defendant falsely in furtherance of their own self-interest. This is because they testified in conjunction with plea agreements. Therefore, although you may convict the defendant on the testimony of Mr. Kellington, Anthony Faiello and Frank Faiello and Mr. Rossi, you must consider their interest in deciding whether or not to believer them. I would at this time reiterate that all witnesses, Commonwealth and defense witnesses, must be subject to your check or examination according to the standards I mentioned earlier as well as others that

6

> might occur to you in reaching your judgment.
>
> Another matter concerning your consideration of witnesses, you have heard evidence that the witnesses Mr. Kellington, Mr. Frank Faiello, Mr. Anthony Faiello, Charles Rossi have been convicted of other crimes. The only purpose for which you may consider this evidence of prior convictions is in deciding whether or not to believe all or part of their testimony. In doing so, you may consider the type of crimes committed, how it may affect the likelihood that they have testified truthfully in this case.

(TT9 at 25-26.) Thus, the jurors heard that Rossi had testified in conjunction with a plea agreement and that they had to bear this in mind.

On direct appeal, the superior court held that this claim was waived because petitioner failed to include it in his post-verdict motions (Answer Ex. 12 at 12). Subsequently, the PCHA court denied the claim that Rossi made false statements because his statements "were accepted by the jury after thorough cross-examination. No independent evidence of perjury is offered in support of this statement and it is therefore, meritless." (Answer Ex. 22 at 2-3.) The superior court affirmed. (Answer Ex. 25.) Petitioner did not demonstrate that, had Rossi testified in more detail about his immunity agreement, there is a reasonable probability the result of the proceeding would have been different. Therefore, this objection is overruled.

Petitioner argues that he submitted new evidence that severely damages the credibility of Frank Faiello and Anthony Faiello and is sufficient to meet the <u>Schlup</u> actual innocence standard which would allow his procedurally defaulted claims (specifically, claims I(A)(1)(b), II, IV, VII and X) to be heard on the merits. As discussed in the supplement, petitioner failed to demonstrate that he meets the standard required under <u>Schlup</u>. In his objections to the supplement, petitioner argues that his "new" evidence does not have to be evidence that was unavailable at the time of trial. The Court of Appeals for the Third Circuit recently addressed

7

this issue by referring to a decision from the Court of Appeals for the Eighth Circuit and its holding that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Houck v. Stickman, No. 05-4580, 2010 WL 4629469, at *4 (3d Cir. Nov. 17, 2010) (citing Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997)). The court of appeals in Houck recognized that this standard can create a dilemma for a petitioner who is relying on the very evidence that trial counsel failed to discover to demonstrate his actual innocence. The court concluded:

> [W]e are inclined to accept the Amrine definition of new evidence with the narrow limitation that if the evidence was not discovered for use at trial because trial counsel was ineffective, the evidence may be regarded as new provided that it is the very evidence that the petitioner claims demonstrates his innocence.

Id. at *5 (footnote omitted). The court did not need to apply the modified Amrine standard because it assumed that Houck's affidavits constituted new evidence, reviewed the affidavits and concluded that Houck failed to demonstrate that no reasonable juror would convict him after considering the newly supplemented record.[2]

Similarly, in this case, although the magistrate judge expressed doubt that petitioner's evidence met the definition of being "new" for purposes of an actual innocence gateway claim, he nevertheless examined the evidence submitted and concluded in the supplement that it did not meet the Schlup standard. In the supplement the magistrate judge observed that petitioner's evidence consisted of a) additional reasons why the jury might have discredited the testimony of Kellington and Frank and Anthony Faiello; b) additional information about plea bargains those

---

[2] The affidavits purported to provide Houck with an alibi by demonstrating that he could not have participated in an assault because he was picking up his child at school, but none of the affidavits identified what time Houck picked up the child. Id. at **6-7.

8

witnesses had received or criminal activities in which they had engaged; and c) additional motives those witnesses might have had to give testimony unfavorable to petitioner. In other words, the new evidence merely presented further examples of evidence that had been submitted at trial. The magistrate judge in the supplement concluded that petitioner's new evidence did not eliminate the possibility that the crime occurred as set forth by the prosecution at trial. He noted that the defense had challenged the credibility of Kellington and Anthony and Frank Faiello, so there was no reason to believe that these additional pieces of information would have led to a different conclusion, and the new evidence did not undermine the evidence of petitioner's motive to commit the murder. (Supp. at 5-7.) The magistrate judge determined that petitioner failed to demonstrate that no reasonable juror would convict him after considering the newly supplemented record. This court agrees.

Prosdocimo contends that he is entitled to have an evidentiary hearing at which he would demonstrate that he meets the Schlup standard. The Court of Appeals for the Third Circuit has held that a petitioner is not automatically entitled to an evidentiary hearing merely because he presents evidence in support of an actual innocence gateway claim; rather, the decision remains in the discretion of the district court, 28 U.S.C. § 2254(e)(2). In exercising that discretion, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new evidentiary hearing would have the potential to advance the petitioner's claim." Goldblum v. Klem, 510 F.3d 204, 222 (3d Cir. 2007) (citation omitted). The court of appeals recently reiterated this point. See Houck, 2010 WL 4629469, at *6 n.16.

This court concludes that, for the reasons discussed above, petitioner did not demonstrate that his new evidence has the potential to advance his claim. Therefore, the court declines to

9

hold an evidentiary hearing with respect to petitioner's actual innocence gateway claim and this objection is overruled.

Prosdocimo argues that the R&R contains an erroneous conclusion that claim V (alleging denial of due process and ineffective assistance of counsel when the Commonwealth engaged in prosecutorial misconduct during the closing argument and trial counsel failed to object) presented solely state-law claims (R&R at 19). In particular, petitioner notes that, in support of his ineffective assistance claim, he cited Nix v. Whiteside, 475 U.S. 157 (1986); Commonwealth v. Pierce, 527 A.2d 973, 974 (Pa. 1987) (which in turn cited the seminal Supreme Court case on ineffectiveness, Strickland v. Washington, 466 U.S. 668 (1984)); Commonwealth v Bailey, 390 A.2d 166 (Pa. 1978) (which in turn cited United States v. DeCoster, 487 A.2d 1197 (D.C. Cir. 1973); and United States v. Ash, 413 U.S. 300 (1973)). (Answer Ex. 23 at 11-12.) In addition, he states that the test for ineffectiveness of counsel under federal and Pennsylvania law is functionally the same. Petitioner is correct. See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Therefore, the court can address the merits of claim V.

On direct appeal, the superior court addressed this claim as alleging prosecutorial misconduct during the prosecution's closing argument and concluded that the claim lacked merit. Specifically, the superior court held:

> It is improper for a prosecutor to divert the jury's attention from the facts of the case before it and to appeal to the fears and emotions of the jury. Commonwealth v. Cherry, 474 Pa. 295, __, 378 A.2d 800, 801 (1977). In the instant case, however, the prosecutor did not divert the attention of the jury or appeal to their fears, rather, the statement by the prosecutor referred specifically to the facts of the case being tried and included a direction to the jury to examine the evidence carefully. "It is well settled that comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the

defendant so that they could not weigh the evidence objectively and render a true verdict." Commonwealth v. Tabron, 502 Pa. 154, __, 465 A.2d 637, 639-640 (1983). Commonwealth v. Gwaltney, 497 Pa. 505, __ 442 A.2d 236, 259 (1982). Here, the remarks of which [Prosdocimo] complains did not have the unavoidable effect of prejudicing the jury, and, in fact, were within the reasonable bounds of fair comment.

[Prosdocimo] also claims that the prosecutor improperly expressed his opinion regarding the credibility of defense witness Miles Gabler and four police officers who testified for [Prosdocimo]. The prosecutor argued in closing that if Gabler was telling the truth, he would be able to provide information to corroborate his story concerning the money that he was allegedly paid for the murder. The prosecutor also referred to the police officers who testified as follows:

> The defendant put on four, I hate to say it, I will call them police officers, four police officers.

[N.T., Vol 51, p. 37].

[Prosdocimo] correctly notes that it is improper for counsel to express his or her opinion regarding the credibility of a witness. Commonwealth v. Gwaltney, supra at __, 442 A.2d at 239. However, we must examine a prosecutor's remarks in the context in which they were made to determine the prejudicial effect, if any, that the remarks may have had upon the jury. Commonwealth v. Smith, 490 Pa. 380, __, 416 A.2d 986, 989 (1980); Commonwealth v. Stolzfus, 462 Pa. 43, __, 337 A.2d 873, 882 (1975); Commonwealth v. Carey, 313 Pa. Super. 20, __, 459 A.2d 389, 394 (1983). Here, the prosecutor's comments regarding Gabler were merely designed to point out the weakness of Gabler's account and his inability to corroborate his testimony. The prosecutor did not call the witness a liar, Commonwealth v. Bricker, 506 Pa. 571, 487 A.2d 346 (1985); Commonwealth v. Hickman, 319 Pa. Super. 261, 466 A.2d 148 (1983); Commonwealth v. Sweeper, 304 Pa. Super. 537, 450 A.2d 1368 (1982); or say that his testimony could not be believed, Commonwealth v. Cherry, supra, or otherwise impugn the credibility of the witness by expressing his personal belief about him. We conclude that these comments were not so prejudicial as to have caused the jury to have a fixed bias or hostility towards the defendants or interfered with their ability to objectively weigh the evidence and to render a true verdict.

The comment by the prosecutor regarding the police officers may, arguably, under some circumstances, have been intemperate. However, even where, arguendo, the remarks of the district attorney are considered intemperate, uncalled for and improper, a new trial is not necessarily required. Commonwealth

11

> v. Stolzfus, supra, at __, 337 A.2d at 882. This comment was not such that it had the unavoidable effect of prejudicing the jury, forming in their minds a fixed bias and hostility towards the defendant so that they could not objectively weigh the evidence and render a true verdict. Thus, we find no abuse of discretion by the trial court in its decision to deny the request for a mistrial based upon these remarks.

(Answer Ex. 12 at 22-24.) The superior court held that the other claims of prosecutorial misconduct were waived because petitioner did not include them in his post-verdict motion. (Answer Ex. 12 at 21.) Subsequently, the PCHA court held that petitioner's ineffective assistance of counsel claims plainly lacked merit (Answer Ex. 22) and the superior court affirmed that holding. (Answer Ex. 25).

Petitioner cannot demonstrate that trial counsel was ineffective for failing to raise a meritless claim. Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010). Moreover, counsel did make a request for a mistrial after the prosecutor made the comment regarding the police officers and the request was denied. Petitioner did not demonstrate that the state court's determinations were an unreasonable application of Strickland. This objection is overruled.

Petitioner argues that the R&R contained an erroneous conclusion with respect to claim VIII, that trial counsel was not ineffective for failing to call William Incardona ("Incardona") because his testimony would have been cumulative (R&R at 21). Petitioner contends that Incardona was the only witness who could have established through first-hand knowledge that he was in Ft. Lauderdale nearly every day during the period from October 1978 until May 1979. Instead, trial counsel presented petitioner's mother, who testified that she only occasionally placed telephone calls to him during this period and rarely saw him in Pittsburgh, and Officer Pilardi, who testified that he did not see petitioner around and "heard" that he was living in

12

Florida. Petitioner contends that the relevance of this proposed testimony is that it would have attacked the prosecution's theory that he was in Pittsburgh during that time period running a drug operation, seeing the Faiello brothers nearly every day and presumably encountering problems with Sacco, ultimately leading to his decision to have Sacco killed.

The PCHA court concluded that this testimony would have been cumulative. (Answer Ex. 22 at 4) and the superior court affirmed (Answer Ex. 25). This factual finding is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). It is noted that petitioner never contended that he was not in Pittsburgh on September 25, 1979, the date Sacco was killed. Thus, even if Incardona had been called to testify as petitioner outlines, this testimony would not have contradicted the evidence that petitioner and Sacco had a fight on Winterburn Street in Greenfield in the summer of 1979 (after he "returned" from Florida), during which petitioner told Kellington to shoot Sacco, but he did not because he saw a police car approaching; the evidence that Sacco owed petitioner $6,000 in drug money; and the evidence that petitioner came to believe that Sacco was a police informant. All these developments could have occurred between May 1979 and September 25, 1979. Even if Incardona's proposed testimony is not strictly cumulative of evidence presented at trial, petitioner still failed to demonstrate that he was prejudiced because counsel failed to call this witness. Therefore, this objection is overruled.

Petitioner contends that the R&R contains an error with respect to claim XI (that he was denied due process and the effective assistance of counsel when they jury heard that he had been arrested for another crime) when the magistrate judge "speculated" that counsel's failure to ask for a curative instruction was not error because "perhaps it was advantageous to the petitioner that this matter not again be brought to the attention of the jury as the Pennsylvania appellate

courts concluded that error was harmless." (R&R at 24.) Petitioner argues that the magistrate judge should not have supplied a hypothetical strategy for defense counsel when he was not even granted an evidentiary hearing in state court at which this issue could have been explored.

This claim arises out of a spontaneous and unsolicited statement made by Officer Pilardi during cross-examination that he was at petitioner's house one night when petitioner was arrested on other charges. (TT7 at 96-97.) Attorney Zimmerman made a motion for a mistrial, which was denied (TT7 at 97-102), but he did not ask for a curative instruction.

This court need not speculate and provide hypothetical reasons to support counsel's actions or omissions. The Pennsylvania Superior Court held as follows:

> The reference by Officer Pilardi, during that cross-examination, to [Prosdocimo's] arrest on an unrelated matter was unsolicited but, nonetheless, its admission into evidence by the trial court constitutes error. We are of a view, however, that the error was harmless under the circumstances. See Commonwealth v. Story, 476 Pa. 391, 383 A.2d 155 (1978). A review of the record as a whole convinces us that the reference to [Prosdocimo's] arrest in an unrelated matter did not contribute to the verdict given the overwhelming evidence of prior criminal activity which was properly admitted and the trial court's charge to the jury which instructed them not to consider evidence of [Prosdocimo's] other illegal activities except for the purpose of showing motive.

(Answer Ex. 12 at 12.) In other words, the superior court held that, although trial counsel committed error, petitioner did not demonstrate that he suffered prejudice as a result. This conclusion was not an unreasonable application of Strickland and it does not entitle him to habeas corpus relief. Even though petitioner did not have an evidentiary hearing on the issue in state court, the PCHA court determined that the record sufficiently allowed it to resolve this issue without a hearing. (Answer Ex. 21 at 2; Ex. 22 at 4.) Therefore, this objection is overruled.

ORDER

AND NOW, this 14th day of December, 2010, for the reasons set forth in the foregoing Memorandum,

IT IS ORDERED that the amended petition for a writ of habeas corpus filed by petitioner William Prosdocimo (ECF No. 55) is dismissed and, because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied;

IT IS FURTHER ORDERED that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if petitioner desires to appeal from this Order, he must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3 of the Federal Rules of Appellate Procedure;

AND IT IS FURTHER ORDERED that Magistrate Judge Mitchell's Report and Recommendation dated October 4, 2010 (ECF No. 69) and the Supplement to the Report and Recommendation dated November 3, 2010 (ECF No. 71) are adopted as the opinion of the court, as modified by the instant Memorandum.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge